1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NORAYR STEPANYAN,

11              Plaintiff,                    No. CIV S-05-1079 PAN

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15              Defendant.                    ORDER
     _____/
16

17              The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying applications for Disability Income

20   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

21   Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will deny

22   plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

23   for summary judgment.

24   /////

25   /////

26   /////

                                                 1

I. Factual and Procedural Background

        In a decision dated April 27, 2004, the ALJ determined plaintiff was not disabled.[1]
The ALJ's decision became the final decision of the Commissioner when the Appeals Council
denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of diabetes
mellitus, mild arthritis of the right shoulder and left elbow, hypertension, and high cholesterol,
but that these impairments do not meet or medically equal a listed impairment; plaintiff's
allegations regarding the extent of his limitations are not fully credible; plaintiff has the residual
functional capacity to perform light work with no more than occasional stooping, balancing,
crouching, crawling, kneeling, and climbing; plaintiff has the residual functional capacity to

---

        [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
§§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
following summarizes the sequential evaluation:

        Step one:  Is the claimant engaging in substantial gainful
activity?  If so, the claimant is found not disabled.  If not, proceed
to step two.
        Step two:  Does the claimant have a "severe" impairment?
If so, proceed to step three.  If not, then a finding of not disabled is
appropriate.
        Step three:  Does the claimant's impairment or combination
of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
404, Subpt. P, App.1?  If so, the claimant is automatically
determined disabled.  If not, proceed to step four.
        Step four:  Is the claimant capable of performing his past
work?  If so, the claimant is not disabled.  If not, proceed to step
five.
        Step five:  Does the claimant have the residual functional
capacity to perform any other work?  If so, the claimant is not
disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9thCir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

1  perform the full range of light work; and plaintiff is not disabled.  Administrative Transcript

2  ("AT") 20-21.

3  Plaintiff contends that the ALJ committed two errors.  First, plaintiff argues that

4  the ALJ failed to address all of the limitations imposed by the examining physician.  Second,

5  plaintiff contends that the evidence required the ALJ to consult with a vocational expert prior to

6  determining plaintiff's residual functional capacity.

7  II.  Standard of Review

8  The court reviews the Commissioner's decision to determine whether (1) it is

9  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

10  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9thCir. 1988) (citing

11  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9thCir. 1988)).

12  Substantial evidence means more than a mere scintilla of evidence, but less than a

13  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9thCir. 1996) (citing Sorenson v.

14  Weinberger, 514 F.2d 1112, 1119 n.10 (9thCir. 1975)).  "It means such relevant evidence as a

15  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

16  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

17  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

18  782 F.2d 1484, 1487 (9thCir. 1986), and both the evidence that supports and the evidence that

19  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9thCir.

20  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

21  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9thCir. 1989).  If

22  substantial evidence supports the administrative findings, or if there is conflicting evidence

23  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

24  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9thCir. 1987), and may be set aside only if an

25  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

26  1335, 1338 (9thCir. 1988).

III.  Analysis

    a.  The ALJ Properly Evaluated All of the Medical Evidence in the Record.

        The ALJ found plaintiff to suffer from numerous severe impairments that precluded him from performing anything more strenuous than light work with some postural limitations.  AT 16, 17.  In making this finding, the ALJ addressed and rejected each of the limitations imposed by the examining physician.  AT 18.  This finding was not in error.

        The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9thCir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9thCir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9thCir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9thCir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9thCir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

1   Dr. Wiggers, a board certified doctor of internal medicine, examined plaintiff on
2  January 12, 2003.  Following a thorough examination, Dr. Wiggers concluded that plaintiff was
3  limited to standing and walking no more than two to four hours in an eight hour workday because
4  of his osteoarthritis.  AT 134.  In addition, Dr. Wiggers reported that plaintiff would be able to
5  lift and carry items weighing 10 pounds frequently and 20 pounds occasionally.  Id.  Finally, Dr.
6  Wiggers stated that plaintiff has frequent postural limitations, occasional manipulative
7  limitations, and occasional visual limitations due to his diabetes.  Id.

8   Specific and legitimate reasons supported the ALJ's rejection of Dr. Wiggers'
9  opinion.  The ALJ addressed each of the limitations stated by Dr. Wiggers, finding no evidence
10  to support them in either the objective results of his examination or any other examination
11  contained in the record.  AT 18.  In addition, the ALJ noted a distinct lack of treatment or further
12  evaluation of plaintiff consistent with the limitations suggested by Dr. Wiggers.  Id.

13   As it concerned plaintiff's manipulative impairment, the ALJ noted that the record
14  contained no clear diagnosis of plaintiff's condition other than mild arthritis.  AT 17.
15  Furthermore, the ALJ found few complaints by plaintiff in the record regarding manipulation and
16  fine motor skills, and treatment, including rehabilitation or surgery to address these issues, had
17  not been recommended by any of the treating physicians.  Id.  The ALJ correctly noted that
18  plaintiff appeared to have full use of his extremities, stating that his hands were calloused upon
19  examination by Dr. Wiggers.  Id.  Finally, the ALJ found that the record contained little evidence
20  that plaintiff was unable to perform everyday tasks with his upper extremities.  Id.

21   Indeed, while plaintiff claimed to be disabled, his testimony regarding
22  manipulative limitations reveals little impairment.  Plaintiff stated that he could not continue
23  work at a pizza delivery restaurant for a variety of reasons, including a need to frequently sit
24  down, AT 252, fatigue, AT 253 and forgetfulness, AT 272.  However, he made no mention of
25  any manipulative issues associated with the work, or an inability to use his upper extremities to
26  perform the tasks necessary to function at the pizzeria.

1    Plaintiff identified many everyday tasks that he was unable to perform, including

2    laundry, household chores, cooking, mowing the lawn, tending a garden, raking the leaves,

3    grocery shopping, sports, fishing, camping, hunting, hobbies or exercise, volunteer, and changing

4    the oil in his car.  AT 254-257.  However, at no time did he cite his manipulative limitations as

5    the basis for his inactivity.  Rather, plaintiff stated that his arthirtis, AT 256, and dizziness, AT

6    257, prevented from performing daily activities, or that his family did them instead, AT 254, 255.

7    The ALJ also relied upon the opinion of plaintiff's treating physican, Dr. Su, who

8    found plaintiff had no manipulative limitations.  AT 206.  The ALJ rejected other aspects of Dr.

9    Su's opinion.  AT 18.  However, because the ALJ's findings with regards to plaintiff's

10   manipulative limitations were supported by substantial evidence in the record, his selective

11   reliance on a particular piece of Dr. Su's findings was not in error.  See Magallanes v. Bowen,

12   881 F.2d 747, 753 (9thCir. 1989).

13   The ALJ also found no limitations in plaintiff's vision that would preclude him

14   from performing light work with postural limitations.  AT 18.  The ALJ correctly noted that the

15   record contained no evidence that plaintiff complained to any of his treating physicians about

16   problems with his eyes.  Id.  In addition, the ALJ observed that plaintiff enjoyed reading and was

17   able to drive without impairment.  Id.

18   Plaintiff testified during the hearing that he could not drive and could not see at

19   nighttime.  AT 274.  However, he also stated that he continued to drive short distances and that

20   the only reason he could no longer work as a pizza delivery man was because he could not

21   remember directions.  AT 272.  Furthermore, plaintiff reported driving himself without any

22   incident to his appointment with examining psychiatrist Dr. Canty.  AT 141.

23   The ALJ addressed in detail each of the limitations imposed by Dr. Wiggers.  The

24   ALJ's finding that Dr. Wiggers' conclusions were overstated and not supported by the record was

25   not in error.  The lack of consistent, objective clinical findings, the opinions of other medical

26   /////

1   experts, and plaintiff's daily activities are specific and legitimate reasons for rejecting the opinion

2   of plaintiff's examining physician.  Substantial evidence supports the ALJ's conclusions.

3                    b.  <u>The ALJ's Use of the Medical Vocational Guidelines was not in Error.</u>

4          The ALJ found plaintiff capable of performing light work with some postural

5   limitations.  Upon consultation with the Medical Vocational guidelines, the ALJ determined that

6   plaintiff was not disabled.  This finding was not in error.

7          The Medical-Vocational Guidelines ("the grids") are in table form.  The tables

8   present various combinations of factors the ALJ must consider in determining whether other

9   work is available.  <u>See generally</u> <u>Desrosiers</u>, 846 F.2d at 577-78 (Pregerson, J., concurring). The

10   factors include residual functional capacity, age, education, and work experience.  For each

11   combination, the grids direct a finding of either "disabled" or "not disabled."

12          There are limits on using the grids, an administrative tool to resolve individual

13   claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

14   testimony of a vocational expert only when the grids accurately and completely describe the

15   claimant's abilities and limitations."  <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9thCir. 1985); <u>see</u>

16   <u>also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ

17   may rely on the grids, however, even when a claimant has combined exertional and nonexertional

18   limitations, if nonexertional limitations are not so significant as to impact the claimant's

19   exertional capabilities.[2] <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9thCir. 1990), <u>overruled on</u>

20   <u>other grounds</u>, <u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9thCir. 1991) (en banc); <u>Polny v. Bowen</u>, 864

21

22       [2]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; <u>compare</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n. 6 (9thCir.1989).

23         Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §

24   416.969a (c) (2003); SSR 83-10, Glossary; <u>Cooper</u>, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability

25   to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  <u>Penny v. Sullivan</u>, 2 F.3d

26   953, 958 (9thCir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1    F.2d 661, 663-64 (9th Cir. 1988); <u>see also</u> <u>Odle v. Heckler</u>, 707 F.2d 439 (9thCir. 1983)

2    (requiring significant limitation on exertional capabilities in order to depart from the grids).

3            The ALJ accurately assessed plaintiff's residual functional capacity according to

4    the evidence in the record.  Social Security Ruling (SSR) 96-8p sets forth the policy

5    interpretation of the Commissioner for assessing residual functional capacity.  SSR 96-8p; <u>see</u>

6    <u>Silveira v. Apfel</u>, 204 F.3d 1257, 1260 (9thCir. 2000) ("This court defer[s] to Social Security

7    Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

8    Residual functional capacity is what a person "can still do despite [the individual's] limitations."

9    20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); <u>see also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085

10   (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities.")

11           The grids accurately capture plaintiff's abilities.  Light work involves lifting no

12   more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

13   pounds.  20 C.F.R. § 404.1567(b).  In addition, light work requires a good deal of walking or

14   standing, or when it involves sitting most of the time with some pushing and pulling of arm or

15   leg controls.  <u>Id.</u>

16           The ALJ was correct in his finding that plaintiff has the ability to perform light

17   work with some postural limitations.  Plaintiff does not dispute the ALJ's finding that he is able

18   to lift 20 pounds occasionally and 10 pounds frequently.  Furthermore, a majority of jobs in the

19   category of light work require only occasional stooping.  SSR 83-10.  In addition, crouching is

20   not required for light work, nor is any ability to crawl, or to climb scaffolding or operate at

21   heights where balance might be critical.  SSR 83-14.  Plaintiff's residual functional capacity

22   clearly falls within the parameters of light work as defined in the regulations.

23           The grids accurately encompass the full range of plaintiff's exertional and

24   nonexertional limitations.  As a result, the ALJ was not required to consult a vocational expert.

25   The findings of the ALJ will not be disturbed.

26   /////

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

    1.  Plaintiff's motion for summary judgment or remand is denied, and

    2.  The Commissioner's cross-motion for summary judgment is granted, and

    3.  The Clerk shall enter judgment for defendant.

DATED:  August 28, 2006.

UNITED STATES MAGISTRATE JUDGE

13
stepanyan.ss